# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **INTELLECTUAL VENTURES II LLC,** | |
| **Plaintiff,** | **Civil Action No. 1:13cv0119** |
| **v.** | |
| **WINDSTREAM CORPORATION,**<br>**WINDSTREAM COMMUNICATIONS, INC.,**<br>**WINDSTREAM COMMUNICATIONS TELECOM, LLC,**<br>**WINDSTREAM COMMUNICATIONS KERRVILLE,**<br>**WINDSTREAM SUGARLAND INC.,**<br>**TEXAS WINDSTREAM, INC.,**<br>**VALOR TELECOMMUNICATIONS OF TEXAS, LLC**<br>   **(d/b/a WINDSTREAM COMMUNICATIONS SOUTHWEST),**<br>**PAETEC HOLDING CORP.,**<br>**PAETEC COMMUNICATIONS, INC.,**<br>   **and**<br>**MCLEODUSA TELECOMMUNICATIONS SERVICES, LLC**<br>      **(d/b/a PAETEC BUSINESS SERVICES)** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT

Plaintiff Intellectual Ventures II LLC ("Intellectual Ventures II") hereby files this Complaint against Defendants Windstream Corporation ("Windstream Corp."), Windstream Communications, Inc., Windstream Communications Telecom, LLC,  Windstream Communications Kerrville, LLC, Windstream SugarLand Inc., Texas Windstream, Inc., Valor Telecommunications of Texas, LLC (d/b/a Windstream Communications Southwest), Paetec Holding Corp. ("Paetec"), Paetec Communications, Inc., and McLeodUSA Telecommunications Services, LLC (d/b/a Paetec Business Services) (all collectively, "Defendants" or "Windstream") and alleges as follows:

## PARTIES

1.      Intellectual Ventures II is a Delaware limited liability company having its principal place of business in Bellevue, Washington.

2.      Defendant Windstream Corporation ("Windstream Corp.") is a Delaware corporation having its principal place of business at 4001 Rodney Parham Road, Little Rock, Arkansas.

3.      Upon information and belief, Windstream Communications, Inc. is a Delaware corporation having its principal place of business at 4001 N Rodney Parham Rd., Little Rock, AR 72212-2442.  Upon information and belief, Windstream Communications, Inc. is a wholly-owned subsidiary of Windstream Corp.

4.      Upon information and belief, Windstream Communications Telecom, LLC is a Texas limited liability corporation having its principal place of business at 4001 Rodney Parham Road, Little Rock, AR 72212-2442.  Upon information and belief, Windstream Communications Telecom, LLC is a wholly-owned subsidiary of Windstream Corp.

5.      Upon information and belief, Windstream Communications Kerrville, LLC is a Texas limited liability company having its principal place of business at 4001 N Rodney Parham Rd., Little Rock, AR 72212-2442.

6.      Upon information and belief, Windstream Sugarland Inc. is a Texas corporation having its principal place of business at 4001 N Rodney Parham Rd., Little Rock, AR 72212-2442.

7.      Upon information and belief, Texas Windstream, Inc. is a Texas corporation with a principal place of business at 4001 N Rodney Parham Rd., Little Rock, AR 72212-2442.

8.      Upon information and belief, Valor Telecommunications of Texas, LLC (d/b/a Windstream Communications Southwest) is a Delaware limited liability company having its principal place of business at 4001 Rodney Parham Road, Little Rock, Arkansas, 72212-2442. Upon information and belief, Valor Telecommunications of Texas, LLC is a wholly owned subsidiary of Windstream.

9.      Upon information and belief, Paetec Holding Corporation ("Paetec"), previously known as Paetec Corp., is a Delaware corporation having its principal place of business at 4001 Rodney Parham Road, Little Rock, Arkansas, 72212-2442. Upon information and belief, Paetec Holding Corp. is a wholly owned subsidiary of Windstream. Upon information and belief, Windstream Corp. acquired Paetec on November 30, 2011.

10.      On information and belief, PaeTec Communications, Inc. is a Delaware corporation having its principal place of business at 4001 Rodney Parham Road, Little Rock, Arkansas, 72212-2442. Upon information and belief, Paetec Communications, Inc. is a wholly-owned subsidiary of Paetec Holding Corporation.

11.     Upon information and belief, McLeodUSA Telecommunications Services, LLC (d/b/a Paetec Business Services) is an Iowa limited liability company having its principal place of business at 4001 N Rodney Parham Rd., Little Rock, AR 72212.

## NATURE OF THE ACTION

12.     This is a civil action for the infringement of United States Patent No. 6,424,636, United States Patent No. 6,246,695, United States Patent No. 5,790,548, United States Patent No. 6,101,182, United States Patent No. 5,534,912,  United States Patent No. 7,817,532, United States Patent No. 7,649,928, United States Patent No. 8,045,601, United States Patent No. 7,860,175, United States Patent No. 6,498,808, United States Patent No. 6,667,991, United States Patent No. 6,654,410, United States Patent No. 7,508,876, United States Patent No. 6,567,473,  United States Patent No. 6,798,735, United States Patent No. 6,266,348, United States Patent No. 7,272,171, United States Patent No. 7,826,545, and United States Patent No. 6,647,068 (collectively, the "Patents-in-Suit") under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq*.

14.     Upon information and belief, Windstream Corporation ("Windstream Corp.") directs and/or controls Windstream's subsidiaries such that Windstream's subsidiaries constitute alter egos and/or agents of Windstream Corp.  Upon information and belief, Windstream Corp. wholly owns each of Windstream's subsidiaries, each of Windstream's subsidiaries is financially dependent on Windstream Corp., Windstream Corp. shares common officers and/or directors with each of Windstream's subsidiaries, and/or Windstream Corp. exercises control over the

marketing and operational policies of each of Windstream's subsidiaries. Windstream and its subsidiaries (hereinafter, "Windstream") participate in the sale, advertising, marketing, and use of DSL equipment and services, including within the State of Texas and this district, that infringe the Patents-in-Suit.

15.     This Court has personal jurisdiction over Defendants because Defendants have committed acts of infringement in violation of 35 U.S.C. § 271 in the State of Texas and this district by selling and using infringing products and systems and by performing infringing methods in Texas and this district in connection with providing DSL services to residential and business customers. These acts have caused and continue to cause injury to Intellectual Ventures II. Defendants derive substantial revenue from the sale of infringing products and services within Texas and this district, and/or expect or should reasonably expect their actions to have consequences within the State of Texas and this district. Defendants have availed themselves of the laws and protections of the State of Texas. In addition, Defendants knowingly induce infringement within the State of Texas and this district by contracting with others to market and sell infringing products and services with the knowledge and intent to facilitate infringing sales and use of the products and services by others within Texas and this district. Further, Windstream sells and/or leases equipment to customers in Texas that has no substantial non-infringing use other than to be used as part of an infringing system and to perform the patented methods.

16.     Venue is proper and convenient in this judicial district as to Defendants pursuant to 28 U.S.C. §§ 1391 and 1400(b).

17.     Intellectual Ventures maintains a substantial physical presence within this district, with offices and 15 employees located at 515 Congress Avenue, Suite 1310, Austin, Texas

78701.  Intellectual Ventures established its offices in Austin in 2008, and maintains a staff of

engineers, attorneys, and professional staff at its Austin location.  This office includes personnel

who perform services for Intellectual Ventures II LLC.

18.     Joinder of Defendants in this case is proper under 35 U.S.C. § 299 because

Defendants act jointly and collectively to offer for sale, sell, use, and induce the use of infringing

DSL products and services.  At least some of Plaintiff's right to relief is joint, several and/or in

the alternative against Defendants and is with respect to or arises from the same transaction,

occurrence, or series of transactions or occurrences relating to the same accused products and

processes, namely the sale or use of infringing DSL apparatuses or systems.  Defendants'

accused activities relate to the same accused products or processes, said products and processes

being at least the same in respects relevant to the Patents-in-Suit.   Intellectual Ventures II's

claims against Defendants share an aggregate of operative facts and common questions of fact

will arise in this action, including the design and operation of the accused DSL systems,

Defendants' collective actions in offering for sale, selling and using the accused products and

processes, and Defendants' collective actions to induce customers to perform some or all of the

steps of the claimed methods.

## THE PATENTS-IN-SUIT

19.     Paragraphs 1-18 are reincorporated by reference as if fully set forth herein.

20.     On July 23, 2002, United States Patent No. 6,424,636 ("the '636 Patent"), titled

"Variable Rate And Variable Mode Transmission System," was duly and lawfully issued by the

United States Patent and Trademark Office ("PTO").  The `636 Patent is attached hereto as

Exhibit A.

21.     Intellectual Ventures II owns all substantial right, title, and interest in the `636 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

22.     On June 12, 2001, United States Patent No. 6,246,695 ("the `695 Patent"), titled "Variable Rate And Variable Mode Transmission System," was duly and lawfully issued by the PTO.  The `695 Patent is attached hereto as Exhibit B.

23.     Intellectual Ventures II owns all substantial right, title, and interest in the `695 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

24.     On August 4, 1998, United States Patent No. 5,790,548 ("the `548 Patent"), titled "Universal Access Multimedia Data Network," was duly and lawfully issued by the PTO.  The `548 Patent is attached hereto as Exhibit C.

25.     Intellectual Ventures II owns all substantial right, title, and interest in the `548 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

26.     On August 8, 2000, United States Patent No. 6,101,182 ("the `182 Patent"), titled "Universal Access Multimedia Data Network," was duly and lawfully issued by the PTO.  The `182 Patent is attached hereto as Exhibit D.

27.     Intellectual Ventures II owns all substantial right, title, and interest in the `182 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

28.      On July 9, 1996, United States Patent No. 5,534,912 ("the `912 Patent"), titled "Extended Range Video On Demand Distribution System," was duly and lawfully issued by the PTO.  The `912 Patent is attached hereto as Exhibit E.

29.      Intellectual Ventures II owns all substantial right, title, and interest in the `912 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

30.      On October 19, 2010, United States Patent No. 7,817,532 ("the `532 Patent"), titled "Adaptive Allocation for Variable Bandwidth Multicarrier Communication," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO").  The `532 Patent is attached hereto as Exhibit F.

31.      Intellectual Ventures II owns all substantial right, title, and interest in the `532 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

32.      On January 19, 2010, United States Patent No. 7,649,928 ("the `928 Patent"), titled "Method For Synchronizing Seamless Rate Adaptation," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO").  The `928 Patent is attached hereto as Exhibit G.

33.      Intellectual Ventures II owns all substantial right, title, and interest in the `928 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

34.      On October 25, 2011, United States Patent No. 8,045,601 ("the `601 Patent"), titled "Method For Synchronizing Seamless Rate Adaptation," was duly and lawfully issued by

the United States Patent and Trademark Office ("PTO").  The `601 Patent is attached hereto as Exhibit H.

36.     Intellectual Ventures II owns all substantial right, title, and interest in the `601 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

36.     On December 28, 2010, United States Patent No. 7,860,175 ("the `175 Patent"), titled "Method for Seamlessly Changing Power Modes In An ADSL System," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO").  The `175 Patent is attached hereto as Exhibit I.

37.     Intellectual Ventures II owns all substantial right, title, and interest in the `175 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

38.     On December 24, 2002, United States Patent No. 6,498,808 ("the `808 Patent"), titled "Seamless Rate Adaptive Multicarrier Modulation System And Protocols," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO").  The `808 Patent is attached hereto as Exhibit J.

39.     Intellectual Ventures II owns all substantial right, title, and interest in the `808 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

40.     On December 23, 2003, United States Patent No. 6,667,991 ("the `991 Patent"), titled "Method For Synchronizing Seamless Rate Adaptation," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO").  The `991 Patent is attached hereto as Exhibit K.

41.     Intellectual Ventures II owns all substantial right, title, and interest in the `991 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

42.     On November 25, 2003, United States Patent No. 6,654,410 ("the '410 Patent"), titled "Fast Initialization Using Seamless Rate Adaptation," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO").  The '410 Patent is attached hereto as Exhibit L.

43.     Intellectual Ventures II owns all substantial right, title, and interest in the '410 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

44.     On March 24, 2009, United States Patent No. 7,508,876 ("the `876 Patent"), titled "Fast Initialization Using Seamless Rate Adaptation," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO").  The `876 Patent is attached hereto as Exhibit M.

45.     Intellectual Ventures II owns all substantial right, title, and interest in the `876 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

46.     On May 20, 2003, United States Patent No. 6,567,473 ("the '473 Patent"), titled "Method For Seamlessly Changing Power Modes In A ADSL System," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO").  The '473 Patent is attached hereto as Exhibit N.

47. Intellectual Ventures II owns all substantial right, title, and interest in the '473 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

48. On September 28, 2004, United States Patent No. 6,798,735 ("the `735 Patent"), titled "Adaptive Allocation For Variable Bandwidth Multicarrier Communication," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO"). The `735 Patent is attached hereto as Exhibit O.

49. Intellectual Ventures II owns all substantial right, title, and interest in the `735 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

50. On July 24, 2001, United States Patent No. 6,266,348 ("the '348 Patent"), titled "Splitterless Multicarrier Modem," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO"). The '348 Patent is attached hereto as Exhibit P.

51. Intellectual Ventures II owns all substantial right, title, and interest in the '348 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

52. On September 18, 2007, United States Patent No. 7,272,171 ("the `171 Patent"), titled "Variable State Length Initialization," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO"). The `171 Patent is attached hereto as Exhibit Q.

53. Intellectual Ventures II owns all substantial right, title, and interest in the `171 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

54.     On November 2, 2010, United States Patent No. 7,826,545 ("the `545 Patent"), titled "Variable State Length Initialization," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO").  The `545 Patent is attached hereto as Exhibit R.

55.     Intellectual Ventures II owns all substantial right, title, and interest in the `545 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

56.     On November 11, 2003, United States Patent No. 6,647,068 ("the `068 Patent"), titled "Variable State Length Initialization," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO").  The `068 Patent is attached hereto as Exhibit S.

57.     Intellectual Ventures II owns all substantial right, title, and interest in the `068 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

## FACTUAL BACKGROUND

### Intellectual Ventures

58.     Intellectual Ventures Management, LLC ("Intellectual Ventures") was founded in 2000.  Since its founding, Intellectual Ventures has been deeply involved in the business of invention.  Intellectual Ventures creates inventions and files patent applications for those inventions; collaborates with others to develop and patent inventions; and acquires and licenses patents from individual inventors, universities, and other institutions.  A significant aspect of Intellectual Ventures' business is managing the plaintiffs in this case, Plaintiffs Intellectual Ventures II.

59.     Intellectual Ventures' business includes purchasing important inventions from individual inventors and institutions and then licensing the inventions to those who need them.  Through this business, Intellectual Ventures allows inventors to reap a financial reward from

their innovations, a frequently difficult task for individual inventors.  To date, Intellectual

Ventures has built a portfolio of nearly 40,000 assets and more than 3,000 of those patents and

patent applications are the result of Intellectual Ventures' own invention efforts, both in-house

and with Intellectual Ventures' inventor network.  Intellectual Ventures has paid individual

inventors more than $400 million for their inventions.  Intellectual Ventures, in turn, has earned

more than $2 billion by licensing these patents to some of the world's most innovative and

successful technology companies who continue to use them to make computer equipment,

software, semiconductor devices, consumer products, and a host of other products.

60.     Intellectual Ventures also develops its own inventions.  Intellectual Ventures has a

staff of scientists and engineers who develop ideas in a broad range of fields, including

agriculture, computer hardware, life sciences, medical devices, semiconductors, and software.

Intellectual Ventures has invested millions of dollars developing such ideas and has filed

hundreds of patent applications on its inventions every year, making it one of the top patent filers

in the world. Intellectual Ventures also has invested in laboratory facilities to assist with the

development and testing of new ideas.

61.     Intellectual Ventures also develops inventions by collaborating with inventors and

research institutions around the world.  For example, Intellectual Ventures has developed

inventions by selecting a technical challenge, requesting proposals for inventions to solve the

challenge from inventors and institutions, selecting the most promising ideas, rewarding the

inventors and institutions for their contributions, and filing patent applications on the ideas.

Intellectual Ventures has invested millions of dollars in this way and has created a network of

more than 4000 inventors worldwide.

### Windstream's Digital Subscriber Line (DSL) Services

62.     Upon information and belief, Windstream is the largest communications company focused on rural America. Windstream provides digital voice, broadband, and entertainment service for approximately 3.2 million customer lines in 16 states. Windstream's services vary by market and include, Internet services, digital television services, Voice Over Internet Protocol ("Voice") services, data/broadband services, data centers, telecommunications equipment, multi-site networking, and wholesale telecommunications services.

63.     Windstream uses digital subscriber line ("DSL") technology and equipment to provide Internet services to business subscribers located in various markets throughout the United States including Harper, Texas.   Windstream, through its subsidiary Paetec, further uses digital subscriber line ("DSL") technology and equipment to provide Internet and Voice services to business subscribers located in various markets throughout the United States including Austin, Texas.  DSL is a broadband transmission technology that involves sending digital information over a telephone line.  Usually, the telephone line is owned by a local telephone company (also called a local exchange carrier).  A DSL connection is normally terminated at each end of a telephone line by a DSL transceiver.  Typically, a DSL connection is established using two main pieces of equipment: (1) DSL customer premises equipment located at a customer premises, and including a DSL transceiver ("Customer Premises Equipment"); and (2) DSL service provider equipment connected to one or more sets of DSL Customer Premises Equipment via telephone line, and including a DSL transceiver ("Service Provider Equipment").  Typically, the Service Provider Equipment is located at some distance remote from the customer premises that it connects to, and optionally may include a digital subscriber line access multiplexer ("DSLAM") among various other elements.  In some situations, at least part of the Service Provider

Equipment may be located at a central office of a telephone exchange that services corresponding customer premises.

64.     Windstream uses DSL technology to provide High Speed Internet Services and voice over Internet Protocol ("Voice") services.  Windstream residential customers may receive High Speed Internet service alone, or as part of a bundle with Voice services.  Windstream business customers may receive High Speed Internet Service alone, or as part of a bundle with Voice or other telephone services.  According to Windstream press releases, Windstream has received grants totaling $1.6 million to construct broadband networks in rural Texas, and has invested almost $538,000 in this endeavor.  Windstream provides service for approximately 3.3 million telephone access lines in 23 states, including Texas.

65.     Windstream provides Customer Premises Equipment to subscribers for deployment at customer premises for the purpose of accessing Windstream's DSL-based Internet and Voice Services.  Upon information and belief, Windstream also sells DSL Customer Premises Equipment that is designed and configured specifically to be compatible with Windstream Service Provider Equipment and Windstream's DSL-based Internet and Voice Services.   Upon information and belief, Windstream leases DSL Customer Premises Equipment to some subscribers.  Upon information and belief, Windstream dispatches service technicians to customer premises in order to install, connect, configure, and use DSL Customer Premises Equipment.

66.     Windstream owns and operates at least some of the telephone lines used to deliver High Speed Internet and Voice services to its customers.  Upon information and belief, Windstream also leases at least some telephone lines from other exchange carriers in order to deliver Windstream High Speed Internet and Voice services to its customers.

14

67.     Windstream also provides wholesale DSL services to wholesale customers including a number of different Internet Service Providers ("ISPs").  Upon information and belief, Windsteam markets these wholesale DSL services as Carrier Solutions and Reseller Solutions on the Windstream website, www.windstream.com.  Upon information and belief, Windstream provides wholesale DSL customers with Customer Premises Equipment units.

68.     Windstream's DSL-based Internet and Voice Services, as well as Windstream's wholesale DSL services (collectively "Windstream's Wholesale and Retail DSL Services") are delivered via DSL communications networks that are designed, configured, integrated and arranged to operate in accordance with DSL standard specifications issued by the International Telecommunication Union, including: Very High Speed Digital Subscriber Line Transceivers 2 (VDSL2), Telecommunication Standardization Sector of International Telecommunication Union (ITU-T), G.993.2 (the "VDSL2 standard"); and/or Asymmetric digital subscriber line transceivers 2 (ADSL2), Telecommunications Standardization Sector of International Telecommunication Union (ITU-T), G.992.3 (the "ADSL2 standard").

69.     At least some of the DSL Customer Premises Equipment that Windstream provides to its DSL customers is designed and configured for communication with Windstream's DSL Service Provider Equipment in accordance with DSL standard specifications including the ADSL2 and/or VDSL2 standards.

70.     Windstream Corporation markets and offers for sale their Wholesale and Retail DSL Services under the Windstream brand name through at least Windstream's website, www.windstream.com.

71.     Windstream infringes the Patents-in-Suit by making, using, offering to sell, and selling DSL products and equipment and also by offering and providing Windstream's

Wholesale and Retail DSL Services to residential, business and governmental customers throughout the United States, including the Western District of Texas.  Defendants are collectively and/or individually liable for providing the infringing products and/or services.  For example, Windstream Corporation approves and authorizes capital expenditure by its subsidiaries necessary to provide Windstream's Wholesale and Retail DSL Services to customers.  Regional operating companies, including Valor Telecommunications of Texas, LLC make services available to customers in specific cities and communities.

### COUNT I
### (Windstream's Infringement of the `636 Patent)

72.     Paragraphs 1-71 are incorporated by reference as if fully restated herein.

73.     The `636 Patent covers, among other things, a DSL transmission system for transmitting information at selectable transmission rates in upstream and downstream directions between first and second DSL modems.  Windstream installs, configures, controls and operates DSL Service Provider Equipment and Customer Premises Equipment for the purpose of providing Wholesale and Retail DSL Services in a manner that provides for setting transmission rates in upstream and/or downstream directions.  As a result of these actions, Windstream has directly infringed one or more claims of the `636 Patent, either literally or under the doctrine of equivalents, by making and using infringing systems in violation of 35 U.S.C. § 271(a).  In addition, customers who subscribe to Windstream's Wholesale and Retail DSL Services have and continue to directly infringe the `636 Patent in violation of 35 U.S.C. § 271(a) by using DSL systems covered by claims of the `636 Patent, either literally or under the doctrine of equivalents.

74.     Windstream also indirectly infringes the `636 Patent under 35 U.S.C. § 271(b) by actively inducing its customers to infringe the `636 Patent.  All of the Windstream Defendants have had knowledge of the `636 Patent since at least the filing date of this complaint.  Further,

Windstream possesses the specific intent to encourage others, including its DSL customers, to infringe the `636 Patent, or at the very least is willfully blind to such infringement.

75.      Windstream encourages its DSL customers to infringe the `636 Patent by providing, installing, configuring, supporting, and maintaining Customer Premises Equipment that is then operated by customers and end users to communicate with Windstream Service Provider Equipment in accordance with one or more claims of the `636 Patent.  In addition, Windstream encourages its DSL customers to infringe the `636 Patent by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream Service Provider Equipment in a manner that causes Windstream's customers to practice one or more claims of the `636 Patent.

76.      Intellectual Ventures II has suffered damage as a result of Windstream's infringement of the `636 Patent.

### COUNT II
### (Windstream's Infringement of the `695 Patent)

77.      Paragraphs 1-76 are incorporated by reference as if fully restated herein.

78.      The `695 Patent covers, among other things, a DSL transmission system including first and second transceivers connected via a subscriber loop for transmitting and receiving information over first and second channels, wherein each of the transceivers includes a controller for selectively changing transmission rates to select between two specified asymmetrical digital subscriber line ("ADSL") modes. Windstream installs, configures, controls and operates Service Provider Equipment and Customer Premises Equipment for the purpose of providing Wholesale and Retail DSL Services to customers via subscriber loops in a manner that provides for selectively changing transmission rates to select between two specified ADSL modes.  As a result of these actions, Windstream directly infringes the `695 Patent, either literally or under the

17

doctrine of equivalents, in violation of 35 U.S.C. § 271(a) by making and using DSL systems covered by claims of the `695 Patent.  In addition, customers who subscribe to Windstream's Wholesale and Retail DSL Services have and continue to directly infringe the `695 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) by using DSL systems covered by claims of the `695 Patent.

79.     Windstream also indirectly infringes the `695 Patent under 35 U.S.C. § 271(b) by actively inducing its customers to infringe the `695 Patent.  All of the Windstream Defendants have had knowledge of the `695 Patent since at least the filing date of this complaint.  Further, Windstream possesses specific intent to encourage others, including its DSL customers, to infringe the `695 Patent, or at the very least is willfully blind to such infringement.  Windstream encourages its DSL customers to infringe the `695 Patent by providing, installing, configuring, supporting, and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream Service Provider Equipment in a manner that causes Windstream customers to use DSL systems covered by claims of the `695 Patent.  In addition, Windstream encourages its DSL customers to infringe the `695 Patent by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream Service Provider Equipment in a manner that causes Windstream customers to use DSL systems covered by claims of the `695 Patent.

80.     Windstream also indirectly infringes the `695 Patent under 35 U.S.C. § 271(c) by contributing to its customer's infringement of the `695 Patent. Windstream imports into the United States, offers to sell, and sells DSL Customer Premises Equipment to customers who subscribe to Windstream's Wholesale and Retail DSL Services knowing that such equipment constitutes a material component of the systems claimed in the `695 Patent, and knowing the

same to be especially made and adapted for use in the customer's direct infringement of the `695 Patent, and further knowing that such equipment is not a staple article or commodity of commerce suitable for substantial noninfringing use.  The DSL Customer Premises Equipment that Windstream sells to its customers is designed and configured specifically to be compatible with and interoperable with Windstream Service Provider Equipment, wherein integration of the Customer Premises Equipment creates a system falling within one or more claims of the `695 Patent that is then used by the customer.

81.     Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `695 Patent.

### COUNT III
### (Windstream's Infringement of the `548 Patent)

82.     Paragraphs 1-81 are incorporated by reference as if fully restated herein.

83.     The `548 Patent covers, among other things, a method for establishing an Internet connection from a Customer Premises Equipment to an Internet connected information services provider, including establishing an ADSL connection, assigning a temporary Internet address, translating a domain name to an Internet address, and using the translated Internet Address to connect the Customer Premises Equipment to an Internet connected information services provider via the ADSL connection.  Windstream performs such a method by controlling and operating a DSL system including DSL Customer Premises Equipment and Service Provider Equipment to provide a system that gives customers access to Internet connected information service providers.  As a result of these actions, Windstream has directly infringed, either literally or under the doctrine of equivalents, one or more method claims of the `548 Patent in violation of 35 U.S.C. § 271(a).

84.     Windstream also indirectly infringes the `548 Patent indirectly under 35 U.S.C. § 271(b) by actively inducing its customers to use Customer Premises Equipment connected to Windstream's Service Provider Equipment in a manner that results in performance by a customer of some or all of the steps required by method claims of the `548 Patent, while Windstream concurrently operates its Service Provider Equipment in a manner that results in performance by Windstream of at least a remainder of the steps required by the same method claims of the `548 Patent.  The performance of  processes falling within the within the scope of one or more method claims of the `548 Patent, resulting from steps performed by Windstream in conjunction with the steps that Windstream induces its customers to perform, has caused and will continue to cause infringement of method claims of the `548 Patent, either literally or under the doctrine of equivalents.

85.     Windstream also infringes the `548 Patent indirectly under 35 U.S.C. § 271(b) by actively inducing its customers to infringe the `548 Patent.  All of the Windstream Defendants have had knowledge of the `548 Patent since at least the filing date of this complaint.  Further, Windstream has had and continues to have the specific intent to encourage others, including its DSL customers, to perform some or all of the steps required by method claims of the `548 Patent, resulting in infringement of the '548 Patent, or at the very least has been willfully blind to such infringement. Windstream encourages its DSL customers to perform some or all of the steps required by certain method claims of the `548 Patent by providing, installing, configuring, supporting, and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream Service Provider Equipment in a manner that, in coordination and combination with steps performed by Windstream's actions, results in infringement of certain method claims of the `548 Patent.  In addition, Windstream encourages

its customers to perform some or all of the steps required by certain method claims of the `548

Patent by providing instructions to customers on how to install, connect, configure, and use DSL

Customer Premises Equipment for communication with Windstream Service Provider

Equipment in a manner that, in coordination and combination with steps performed by

Windstream's actions, resulted in and continues to result in performance of all of the steps of

certain method claims of the `548 Patent.

86.     Intellectual Ventures II has suffered damage as a result of Defendants'

infringement of the `548 Patent.

### COUNT IV
### (Windstream's Infringement of the `182 Patent)

87.     Paragraphs 1-86 are incorporated by reference as if fully restated herein.

88.     The `182 Patent covers, among other things, a communication system comprising

telephone switching equipment, local loops connecting the switching equipment to customer

premises equipment, splitters for splitting signals received over local loops into data signals and

telephony signals, and equipment that provides for dynamic handling of addresses for data

signals. Windstream integrates, configures, controls and operates communications systems

including telephone switching equipment, DSL Service Provider Equipment connected to DSL

Customer Premises Equipment via local loops, DSL splitter devices, and service provider

equipment that provides for dynamic handling of Internet addresses.  As a result of these actions,

Windstream directly infringes the `182 Patent in violation of 35 U.S.C. § 271(a) by making and

using systems covered by claims of the `182 Patent, either literally or under the doctrine of

equivalents.  In addition, customers who subscribe to Windstream's DSL-based Internet, Voice

and TV Services have and continue to directly infringe the `182 Patent in violation of 35 U.S.C.

§ 271(a) by using systems covered by claims of the `182 Patent, either literally or under the doctrine of equivalents.

89.     Windstream also infringes the `182 Patent indirectly under 35 U.S.C. § 271(b) by actively inducing its customers to infringe the `182 Patent.  All of the Windstream Defendants have had knowledge of the `182 Patent since at least the filing date of this complaint.  Further, Windstream possesses the specific intent to encourage others, including its DSL customers, to infringe the `182 Patent, or at the very least is willfully blind to such infringement.  Windstream encourages its DSL customers to infringe the `182 Patent by providing, installing, configuring, supporting, and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream Service Provider Equipment.  In addition, Windstream encourages its DSL customers to infringe the `182 Patent by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream Service Provider Equipment in a manner that causes Windstream customers to use DSL systems covered by the claims of the '182 Patent.

90.     Windstream also infringes the `182 Patent indirectly under 35 U.S.C. § 271(c) by contributing to its own customer's infringement of the `182 Patent. Windstream imports into the United States, offers to sell, and sells DSL Customer Premises Equipment to customers who subscribe to Windstream's Wholesale and Retail DSL Services knowing that such equipment constitutes a material component of the systems claimed in the `182 Patent, and knowing the same to be especially made and adapted for use in the customer's direct infringement of the `182 Patent, and further knowing that such equipment is not a staple article or commodity of commerce suitable for substantial noninfringing use.  The DSL Customer Premises Equipment that Windstream sells to its customers is designed and configured specifically to be compatible

with and interoperable with Windstream Service Provider Equipment, wherein integration of the Customer Premises Equipment creates a system falling within one or more claims of the `182 Patent that is then used by the customer.

91.     Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `182 Patent.

## COUNT V
### (Windstream's Infringement of the `912 Patent)

92.     Paragraphs 1-91 are incorporated by reference as if fully restated herein.

93.     Windstream, either alone or in conjunction with others, has directly infringed the `912 Patent by performing processes covered by one or more of the method claims of the `912 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271(a).

94.     The `912 Patent covers, among other things, a method of improving a video distribution system that provides information to end users over telephone lines using asymmetrical digital subscriber line ("ADSL") interface units, wherein an ADSL source side interface unit is located at a site remote from a central office and connected to a source of video information using a broadband communication link.  Windstream performs such a method when arranging, connecting, and deploying video distribution systems using fiber-to-the-node ("FTTN") techniques and other technology in a manner that directly infringes certain method claims of the `912 Patent in violation of 35 U.S.C. § 271(a).

95.     All of the Windstream Defendants have had knowledge of the `912 Patent since at least the filing date of this complaint.

96.     Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `912 Patent.

## COUNT VI
### (Windstream's Infringement of the `532 Patent)

97.     Paragraphs 1-96 are incorporated by reference as if fully restated herein.

98.     The `532 Patent covers, among other things, a method for communication performed by a transceiver in a multicarrier modulation system that includes utilizing a first allocation of bits to sub-channels, selecting a different allocation of bits, transmitting a flag, and utilizing the different allocation of bits to communicate after a predetermined number of frames following transmission of the flag.  Windstream directly infringes one or more method claims of the `532 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) by operating DSL Service Provider Equipment and/or operating DSL Customer Premises Equipment to deliver DSL services that conform with the ADSL2 and/or VDSL2 standards.

99.     Windstream's DSL customers and end users have also directly infringed, and continue to directly infringe one or more of the method claims of the `532 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) through their use and operation of DSL Customer Premises Equipment configured for communication with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards.

100.     Windstream also infringes the `532 Patent indirectly under 35 U.S.C. § 271(b) by actively inducing its customers to infringe.  All of the Windstream Defendants have had knowledge of the `532 Patent since at least the filing date of this complaint.  Windstream possesses specific intent to encourage others, including its DSL customers and end users, to infringe certain method claims of the `532 Patent by using certain Customer Premises Equipment, or at the very least is willfully blind to such infringement.  Windstream encourages its DSL customers to infringe the `532 Patent by providing, installing, configuring, supporting,

and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that causes customers to infringe method claims of the `532 Patent.  In addition, Windstream encourages its DSL customers to infringe the `532 Patent by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that causes customers to infringe certain method claims of the `532 Patent.

101.    Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `532 Patent.

## COUNT VII
### (Windstream's Infringement of the `928 Patent)

102.    Paragraphs 1-101 are incorporated by reference as if fully restated herein.

103.    The `928 Patent covers, among other things, a method for seamlessly changing transmission parameters in a multicarrier transceiver, wherein a seamless transition is based on a sync symbol or an inverted sync symbol.  Windstream directly infringes one or more of the method claims of the `928 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) when operating DSL Service Provider Equipment and/or operating DSL Customer Premises Equipment to deliver DSL services that conform with the ADSL2 and/or VDSL2 standards.

104.    Windstream's DSL customers and end users have also directly infringed, and continue to directly infringe one or more of the method claims of the `928 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) through their use and operation of DSL Customer Premises Equipment configured for communication with

Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards.

105.    Windstream also infringes the `928 Patent indirectly under 35 U.S.C. § 271(b) by actively inducing its customers to infringe certain method claims of the `928 Patent.  All of the Windstream Defendants have had knowledge of the `928 Patent since at least the filing date of this complaint.  Windstream possesses specific intent to encourage others, including its DSL customers and end users, to infringe method claims of the `928 Patent by using certain Customer Premises Equipment, or at the very least has been willfully blind to such infringement. Windstream encourages its DSL customers to infringe the `928 Patent by providing, installing, configuring, supporting, and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that causes Windstream customers to infringe method claims of the `928 Patent.  In addition, Windstream encourages this infringement by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that causes Windstream customers to infringe method claims of the `928 Patent.

106.    Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `928 Patent.

## COUNT VIII
### (Windstream's Infringement of the `601 Patent)

107.    Paragraphs 1-106 are incorporated by reference as if fully restated herein.

108.    The `601 Patent covers, among other things, an apparatus including a transceiver configured to transmit a message during data communications to change from a first data rate to

a second data rate, and to make a transition between the first and second data rates based at least

on a sync symbol or a phase-shifted sync symbol.  Windstream directly infringes one or more

claims of the `601 Patent, either literally or under the doctrine of equivalents, in violation of 35

U.S.C. § 271(a) by operating DSL Service Provider Equipment and/or operating DSL Customer

Premises Equipment in accordance with the ADSL2 and/or VDSL2 standards as well as by

offering to sell and selling DSL Customer Premises Equipment capable of communicating data

in accordance with the ADSL2 and/or VDSL2 standards.

109.    Windstream's DSL customers and end users have also directly infringed, and

continue to directly infringe one or more of the claims of the `601 Patent, either literally or under

the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) through their use and operation of

DSL Customer Premises Equipment configured for communication with Windstream's DSL

Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards.

110.    Windstream also infringes the `601 Patent indirectly under 35 U.S.C. § 271(b) by

actively inducing its customers to infringe the `601 Patent upon use of certain DSL Customer

Premises Equipment.  Windstream has had knowledge of the `601 Patent since at least the filing

date of this complaint.  Further, Windstream possesses specific intent to encourage others,

including its DSL customers and end users, to infringe claims of the `601 Patent, or at the very

least is willfully blind to such infringement.  Windstream encourages its DSL customers to

infringe the `601 Patent by providing, installing, configuring, supporting, and maintaining

Customer Premises Equipment that is then used by customers and end users to communicate

with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or

VDSL2 standards in a manner that causes Windstream customers to infringe claims of the `601

Patent.  In addition, Windstream encourages this infringement by providing instructions to

customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that causes Windstream customers to infringe claims of the `601 Patent.

111.    Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `601 Patent.

**COUNT IX**
**(Windstream's Infringement of the `175 Patent)**

112.    Paragraphs 1-111 are incorporated by reference as if fully restated herein.

113.    The `175 Patent covers, among other things, a method of changing sub-channel transmission parameters in a multicarrier transmitter based on a change in phase of a non-data-carrying Discrete Multitone Modulation ("DMT") symbol, wherein the data-carrying DMT symbols are decoupled from a plurality of codewords and a plurality of ADSL frames. Windstream directly infringes one or more of the method claims of the `175 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) when operating DSL Service Provider Equipment and/or operating DSL Customer Premises Equipment to deliver DSL services that conform with the ADSL2 and/or VDSL2 standards.

114.    Windstream's DSL customers and end users have also directly infringed, and continue to directly infringe one or more of the method claims of the `175 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) through their use of DSL Customer Premises Equipment configured for communication with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards.

115.    Windstream also infringes the `175 Patent indirectly under 35 U.S.C. § 271(b) by actively inducing its customers to infringe method claims of the `175 Patent upon use of certain

DSL Customer Premises Equipment.  Windstream has had knowledge of the `175 Patent since at least the filing date of this complaint.  Further, Windstream possesses specific intent to encourage others, including its DSL customers and end users, to infringe method claims of the `175 Patent, or at the very least is willfully blind to such infringement. Windstream encourages its DSL customers to infringe the `175 Patent by providing, installing, configuring, supporting, and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that causes Windstream customers to infringe method claims of the `175 Patent.  In addition, Windstream encourages its DSL customers to infringe the `175 Patent by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that causes Windstream customers to infringe method claims of the `175 Patent.

116.    Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `175 Patent.

## COUNT X
### (Windstream's Infringement of the `808 Patent)

117.    Paragraphs 1-116 are incorporated by reference as if fully restated herein.

118.    The `808 Patent covers, among other things, a method for seamlessly changing a transmission bit rate in a multicarrier communication system, which includes seamlessly transitioning from a first rate to a second rate, wherein a specified codeword size and a specified number of parity bits for forward error correction used when transmitting each of a first plurality of codewords are used when transmitting each of a second plurality of codewords.  Windstream directly infringes one or more of the method claims of the `808 Patent, either literally or under

the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) when operating DSL Service

Provider Equipment and/or operating DSL Customer Premises Equipment to deliver DSL

services that conform with the ADSL2 and/or VDSL2 standards.

119.    Windstream's DSL customers and end users have also directly infringed, and

continue to directly infringe one or more of the method claims of the `808 Patent, either literally

or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) through their use and

operation of DSL Customer Premises Equipment configured for communication with

Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2

standards.

120.    Windstream also infringes the `808 Patent indirectly under 35 U.S.C. § 271(b) by

actively inducing its customers to infringe method claims of the `808 Patent upon use of certain

DSL Customer Premises Equipment.  All of the Windstream Defendants have had knowledge of

the `808 Patent since at least the filing date of this complaint.  Further, Windstream possesses

specific intent to encourage others, including its DSL customers and end users, to infringe

method claims of the `808 Patent, or at the very least is willfully blind to such infringement.

Windstream encourages its DSL customers to infringe method claims of the `808 Patent by

providing, installing, configuring, supporting, and maintaining Customer Premises Equipment

that is then used by customers and end users to communicate with Windstream's DSL Service

Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that

causes Windstream customers to infringe the `808 Patent.  In addition, Windstream encourages

this infringement by providing instructions to customers on how to install, connect, configure,

and use DSL Customer Premises Equipment for communication with Windstream's DSL Service

Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that

causes Windstream customers to infringe method claims of the `808 Patent.

121.    Intellectual Ventures II has suffered damage as a result of Defendants'

infringement of the `808 Patent.

**COUNT XI**
**(Windstream's Infringement of the `991 Patent)**

122.    Paragraphs 1-121 are incorporated by reference as if fully restated herein.

123.    The `991 Patent covers, among other things, a method for seamlessly changing a

bit rate in a multicarrier communication system including a transmitter and a receiver based on a

message having at least one parameter of a second bit allocation table, and synchronizing use of

the second bit allocation table between the transmitter and receiver.  Windstream directly

infringes one or more of the method claims of the `991 Patent, either literally or under the

doctrine of equivalents, in violation of 35 U.S.C. § 271(a) by controlling and operating DSL

systems (including DSL Customer Premises Equipment and Service Provider Equipment) that

operate in accordance with the ADSL2 and/or VDSL2 standards.

124.    Windstream also infringes the `991 Patent indirectly under 35 U.S.C. § 271(b) by

actively inducing its customers to use DSL Customer Premises Equipment connected to

Windstream's Service Provider Equipment in a manner that results in performance by a customer

of some or all of the steps required by method claims of the `991 Patent, while Windstream

concurrently operates its Service Provider Equipment in a manner that results in performance by

Windstream of at least a remainder of the steps required by the same method claims of the `991

Patent.  The performance of processes falling within the within the scope of one or more method

claims of the `991 Patent, resulting from steps performed by Windstream in conjunction with the

steps that Windstream induces its customers to perform, has caused and will continue to cause

31

infringement of method claims of the `991 Patent, either literally or under the doctrine of equivalents.

125.    Windstream has had knowledge of the `991 Patent since at least the filing date of this complaint.  Further, Windstream possesses specific intent to encourage others, including its DSL customers, to perform some or all of the steps required by method claims of the `991 Patent, resulting in infringement of the '991 Patent, or at the very least is willfully blind to such infringement.  Windstream encourages its DSL customers to perform some or all of the steps required by certain method claims of the `991 Patent by providing, installing, configuring, supporting, and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream Service Provider Equipment in a manner that, in coordination and combination with steps performed by Windstream's actions, results infringement of certain method claims of the `991 Patent.  In addition, Windstream encourages its customers to perform some or all of the steps required by certain method claims of the `991 Patent by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream Service Provider Equipment in a manner that, in coordination and combination with steps performed by Windstream's actions, results in performance of certain method claims of the `991 Patent.

126.    Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `991 Patent.

**COUNT XII**
**(Windstream's Infringement of the `410 Patent)**

127.    Paragraphs 1-126 are incorporated by reference as if fully restated herein.

128.    The `410 Patent covers, among other things, a method of initializing to establish a communication link between first and second transceivers using a first bit allocation table that

approximates a corresponding actual second bit allocation table.  Windstream performs such a method by controlling and operating a DSL system including the DSL Customer Premises Equipment and the Service Provider Equipment to operate in accordance with the ADSL2 standard.  As a result of these actions, Windstream directly infringes one or more of the method claims of the `410 Patent, either literally or under the doctrine of equivalents in violation of 35 U.S.C. § 271(a).

129.    Windstream also infringes the `410 Patent indirectly under 35 U.S.C. § 271(b) by actively inducing its customers to use DSL Customer Premises Equipment connected to Windstream's Service Provider Equipment in a manner that results in performance by a customer of some or all of the steps required by method claims of the `410 Patent, while Windstream concurrently operates its Service Provider Equipment in a manner that results in performance by Windstream of at least a remainder of the steps required by the same method claims of the `410 Patent.  The performance of processes falling within the within the scope of one or more method claims of the `410 Patent, resulting from steps performed by Windstream in conjunction with the steps that Windstream induces its customers to perform, has caused and will continue to cause infringement of method claims of the `410 Patent, either literally or under the doctrine of equivalents.

130.    Windstream has had knowledge of the `410 Patent since at least the filing date of this complaint.  Further, Windstream possesses specific intent to encourage others, including its DSL customers, to perform some or all of the steps required by method claims of the `410 Patent, resulting in infringement of the '410 Patent, or at the very least is willfully blind to such infringement.  Windstream encourages its DSL customers to perform some or all of the steps required by certain method claims of the `410 Patent by providing, installing, configuring,

supporting, and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream Service Provider Equipment in a manner that, in coordination and combination with steps performed by Windstream's actions, results in infringement of certain method claims of the `410 Patent.  In addition, Windstream encourages its customers to perform some or all of the steps required by certain method claims of the `410 Patent by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream Service Provider Equipment in a manner that, in coordination and combination with steps performed by Windstream's actions, result in performance of certain method claims of the `410 Patent.

131.    Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `410 Patent.

### COUNT XIII
### (Windstream's Infringement of the `876 Patent)

132.    Paragraphs 1-131 are incorporated by reference as if fully restated herein.

133.    The `876 Patent covers, among other things, a method for multicarrier communications that includes performing an initialization to establish a communication link at a first data rate using a first bit allocation table stored prior to the initialization and seamlessly adapting the first data rate to a second data rate using a second bit allocation table, transmitting or receiving a first plurality of codewords at the first data rate, changing the first data rate to the second data rate, and transmitting or receiving a second plurality of codewords at the second data rate, wherein a specified codeword size and a specified number of parity bits for forward error correction used for the first plurality of codewords are used for the second plurality of codewords to achieve a seamless change in data rate.  Windstream directly infringes one or more of the method claims of the `876 Patent, either literally or under the doctrine of equivalents, in violation

of 35 U.S.C. § 271(a) when operating DSL Service Provider Equipment and/or operating DSL Customer Premises Equipment to deliver DSL services that conform with the ADSL2 standard.

134.    Windstream's DSL customers and end users have also directly infringed, and continue to directly infringe one or more of the method claims of the `876 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) through their use and operation of DSL Customer Premises Equipment configured for communication with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 standard.

135.    Windstream also infringes the `876 Patent indirectly in violation of 35 U.S.C. § 271(b) by actively inducing its customers to infringe method claims of the `876 Patent through the use of certain DSL Customer Premises Equipment.  Windstream has had knowledge of the `876 Patent since at least the filing date of this complaint.  Further, Windstream possesses specific intent to encourage others, including its DSL customers and end users, to infringe method claims of the `876 Patent, or at the very least is willfully blind to such infringement. Windstream encourages its DSL customers to infringe the `876 Patent by providing, installing, configuring, supporting, and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 standard in a manner that causes Windstream customers to infringe method claims of the `876 Patent.  In addition, Windstream encourages this infringement by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 standard in a manner that causes Windstream customers to infringe method claims of the `876 Patent.

136.    Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `876 Patent.

**COUNT XIV**
**(Windstream's Infringement of the `473 Patent)**

137.    Paragraphs 1-136 are incorporated by reference as if fully restated herein.

138.    The `473 Patent covers, among other things, a method for seamlessly changing between a first power mode and a second power mode in a system including a transmitter and a receiver, wherein a specified codeword size, and a specified number of parity bits for forward error correction used to transmit and receive codewords in the first power mode are also used to transmit and receive codewords in the second power mode.  Windstream performs such a method by controlling and operating a DSL system including DSL Customer Premises Equipment and DSL Service Provider Equipment in accordance with the ADSL2 standard.  As a result of these actions, Windstream directly infringes one or more of the method claims of the `473 Patent, either literally or under the doctrine of equivalents in violation of 35 U.S.C. § 271(a).

139.    Windstream also indirectly infringes the `473 Patent under 35 U.S.C. § 271(b) by actively inducing its customers to use Customer Premises Equipment configured for communication with Windstream's Service Provider Equipment in accordance with the ADSL2 standard in a manner that results in performance by a customer of some or all of the steps required by method claims of the `473 Patent, while Windstream concurrently operates its Service Provider Equipment in a manner that results in performance by Windstream of at least a remainder of the steps required by the same method claims of the `473 Patent.  The performance of processes falling within the within the scope of one or more method claims of the `473 Patent, resulting from steps performed by Windstream in conjunction with the steps that Windstream

induces its customers to perform, has caused and will continue to cause infringement of method claims of the `473 Patent, either literally or under the doctrine of equivalents.

140.    Windstream has had knowledge of the `473 Patent since at least the filing date of this complaint.  Further, Windstream possesses specific intent to encourage others, including its DSL customers, to perform some or all of the steps required by method claims of the `473 Patent, resulting in infringement of the '473 Patent, or at the very least is willfully blind to such infringement.  Windstream encourages its DSL customers to perform some or all of the steps required by certain method claims of the `473 Patent by providing, installing, configuring, supporting, and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream Service Provider Equipment in accordance with the ADSL2 standard in a manner that, in coordination and combination with steps performed by Windstream's actions, results infringement of certain method claims of the `473 Patent.  In addition, Windstream encourages its customers to perform some or all of the steps required by certain method claims of the `473 Patent by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream Service Provider Equipment in accordance with the ADSL2 standard in a manner that, in coordination and combination with steps performed by Windstream's actions, results in performance of certain method claims of the `473 Patent.

141.    Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `473 Patent.

## COUNT XV
### (Windstream's Infringement of the `735 Patent)

142.    Paragraphs 1-141 are incorporated by reference as if fully restated herein.

143.    The `735 Patent covers, among other things, a method for communication between two units, including allocating bits to subchannels according to a first bit allocation table, monitoring the channel to develop a second bit allocation table, transmitting the second bit allocation table to the other of the two units, and storing the first and second bit allocation tables at each of the units. Windstream performs such a method by controlling and operating a DSL system including DSL Customer Premises Equipment and DSL Service Provider Equipment in accordance with the ADSL2 standard.  As a result, Windstream directly infringes one or more of the method claims of the `735 Patent, either literally or under the doctrine of equivalents in violation of 35 U.S.C. § 271(a).

144.    Windstream also infringes the `735 Patent indirectly under 35 U.S.C. § 271(b) by actively inducing its customers to use Customer Premises Equipment configured for communication with Windstream's Service Provider Equipment in accordance with the ADSL2 standard in a manner that results in performance by a customer of some or all of the steps required by method claims of the `735 Patent, while Windstream concurrently operates its Service Provider Equipment in a manner that results in performance by Windstream of at least a remainder of the steps required by the same method claims of the `735 Patent.  The performance of processes falling within the within the scope of one or more method claims of the `735 Patent, resulting from steps performed by Windstream in conjunction with the steps that Windstream induces its customers to perform, has caused and will continue to cause infringement of method claims of the `735 Patent, either literally or under the doctrine of equivalents.

145.    Windstream has had knowledge of the `735 Patent since at least the filing date of this complaint.  Further, Windstream possesses specific intent to encourage others, including its DSL customers, to perform some or all of the steps required by method claims of the `735

Patent, resulting in infringement of the '735 Patent, or at the very least is willfully blind to such infringement.  Windstream encourages its DSL customers to perform some or all of the steps required by certain method claims of the `735 Patent by providing, installing, configuring, supporting, and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream Service Provider Equipment in accordance with the ADSL2 standard in a manner that, in coordination and combination with steps performed by Windstream's actions, causes performance of certain method claims of the `735 Patent.  In addition, Windstream encourages its customers to perform some or all of the steps required by certain method claims of the `735 Patent by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream Service Provider Equipment in accordance with the ADSL2 standard in a manner that, in coordination and combination with steps performed by Windstream's actions, causes performance of certain method claims of the `735 Patent.

146.    Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `735 Patent.

## COUNT XVI
### (Windstream's Infringement of the `348 Patent)

147.    Paragraphs 1-146 are incorporated by reference as if fully restated herein.

148.    The `348 Patent covers, among other things, a method of transmitting data through upstream and downstream channels, respectively, from first and second pluralities of subchannels, including storing at least first and second parameter sets defining data communications over the channels under at least two different communication conditions, and selecting a parameter set for use in accordance with a prevailing communication condition. Windstream directly infringes one or more of the method claims of the `348 Patent, either

literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) when operating

DSL Service Provider Equipment and/or operating DSL Customer Premises Equipment to

deliver DSL services that conform with the ADSL2 standard.

149.    Windstream's DSL customers and end users have also directly infringed, and

continue to directly infringe one or more of the method claims of the `348 Patent, either literally

or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) through their use and

operation of DSL Customer Premises Equipment configured for communication with

Windstream's DSL Service Provider Equipment in accordance with the ADSL2 standard.  As a

result, Windstream's customers are direct infringers pursuant to 35 U.S.C. § 271(a).

150.    Windstream also infringes the `348 Patent indirectly under 35 U.S.C. § 271(b) by

actively inducing its customers to infringe method claims of the `348 Patent upon use of certain

DSL Customer Premises Equipment.  All of the Windstream Defendants have had knowledge of

the `348 Patent since at least the filing date of this complaint.  Further, Windstream possesses

specific intent to encourage others, including its DSL customers and end users, to use DSL

Customer Premises Equipment configured for communication with Windstream's DSL Service

Provider Equipment in accordance with the ADSL2 standard in a manner that results in

infringement of method claims of the `348 Patent, or at the very least is willfully blind to such

infringement.  Windstream encourages its DSL customers to infringe the `348 Patent by

providing, installing, configuring, supporting, and maintaining Customer Premises Equipment

that is then used by customers and end users to communicate with Windstream's DSL Service

Provider Equipment in accordance with the ADSL2 standard in a manner that causes

infringement of method claims of the `348 Patent.  In addition, Windstream encourages this

infringement by providing instructions to customers on how to install, connect, configure, and

use DSL Customer Premises Equipment for communication with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 standard in a manner that causes infringement of method claims of the `348 Patent.

151.    Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `348 Patent.

## COUNT XVII
### (Windstream's Infringement of the `171 Patent)

152.    Paragraphs 1-151 are incorporated by reference as if fully restated herein.

153.    The `171 Patent covers, among other things, a variable state length initialization method including transmitting from a first transceiver to a second transceiver information identifying a first value that is used to determine a first minimum number of symbols, transmitting from the second transceiver to the first transceiver information identifying a second value that is used to determine a second minimum number of symbols, selecting the greater of the first and second minimum number of symbols, and transmitting from the first transceiver to the second transceiver, during an initialization state, the selected number of multicarrier symbols. Windstream performs such a method by controlling and operating a DSL system including DSL Customer Premises Equipment and DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards.  As a result of these actions, Windstream has directly infringed one or more of the method claims of the `171 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

154.    Windstream also indirectly infringes the `171 Patent under 35 U.S.C. § 271(b) by actively inducing its customers to use Customer Premises Equipment configured for communication with Windstream's Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that results in performance by a customer of some or all of

the steps required by method claims of the `171 Patent, while Windstream concurrently operates its Service Provider Equipment in a manner that results in performance by Windstream of at least a remainder of the steps required by the same method claims of the `171 Patent.  The performance of processes falling within the within the scope of one or more method claims of the `171 Patent, resulting from steps performed by Windstream in conjunction with the steps that Windstream induces its customers to perform, has caused and will continue to cause infringement of method claims of the `171 Patent, either literally or under the doctrine of equivalents.

155.    Windstream has had knowledge of the `171 Patent since at least the filing date of this complaint.  Further, Windstream possesses specific intent to encourage others, including its DSL customers, to perform some or all of the steps required by method claims of the `171 Patent, resulting in infringement of the '171 Patent, or at the very least is willfully blind to such infringement.  Windstream encourages its DSL customers to perform some or all of the steps required by certain method claims of the `171 Patent by providing, installing, configuring, supporting, and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that, in coordination and combination with steps performed by Windstream's actions, results in infringement of certain method claims of the `171 Patent.  In addition, Windstream encourages its customers to perform some or all of the steps required by certain method claims of the `171 Patent by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream Service Provider Equipment in accordance with the ADSL2

and/or VDSL2 standards in a manner that, in coordination and combination with steps performed by Windstream's actions, results in infringement of certain method claims of the `171 Patent.

156.    Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `171 Patent.

### COUNT XVIII
### (Windstream's Infringement of the `545 Patent)

157.    Paragraphs 1-156 are incorporated by reference as if fully restated herein.

158.    The `545 Patent covers, among other things, a multicarrier communication system including a transmitter and a receiver configured to perform a variable state length initialization method that includes a transmission, or a reception, of a message during an initialization state, wherein the message includes a selected number of multicarrier symbols, and wherein the transmitter and the receiver are configured to cooperatively determine the selected number of multicarrier symbols.  Windstream directly infringes one or more method claims of the `545 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) when operating DSL Service Provider Equipment and/or operating DSL Customer Premises Equipment to deliver DSL services that conform to the ADSL2 and/or VDSL2 standards.

159.    Windstream's DSL customers and end users have also directly infringed, and continue to directly infringe one or more of the method claims of the `545 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) through their use and operation of DSL Customer Premises Equipment configured for communication with Windstream's DSL Service Provider Equipment in accordance with ADSL2 and/or VDSL2 standards.

160.    Windstream also indirectly infringes the `545 Patent under 35 U.S.C. § 271(b) by actively inducing its customers to infringe method claims of the `545 Patent upon use of certain

DSL Customer Premises Equipment.   Windstream has had knowledge of the `545 Patent since at least the filing date of this complaint.  Further, Windstream possesses specific intent to encourage others, including its DSL customers and end users, to infringe method claims of the `545 Patent, or at the very least is willfully blind to such infringement.  Windstream encourages its DSL customers to infringe the `545 Patent by providing, installing, configuring, supporting, and maintaining Customer Premises Equipment that is then used by customers and end users to communicate with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that causes customers to infringe method claims of the `545 Patent.  In addition, Windstream encourages infringement by providing instructions to customers on how to install, connect, configure, and use DSL Customer Premises Equipment for communication with Windstream's DSL Service Provider Equipment in accordance with the ADSL2 and/or VDSL2 standards in a manner that causes customers to infringe method claims of the `545 Patent.

161.    Intellectual Ventures II has suffered damage as a result of Defendants' infringement of the `545 Patent.

## COUNT XIX
### (Windstream's Infringement of the `068 Patent)

162.    Paragraphs 1-161 are incorporated by reference as if fully restated herein.

163.    The `068 Patent covers, among other things, a method for variable state length initialization that includes transmitting from a first to a second transceiver information identifying a value that determines a minimum number of symbols in an initialization state, transmitting from the first transceiver to the second transceiver at least the minimum number of symbols, and transmitting a signal from the second transceiver to the first transceiver allowing the first transceiver to exit the initialization state and enter a new initialization state. Windstream

performs such a method by controlling and operating a DSL system including DSL Customer
Premises Equipment and DSL Service Provider Equipment in accordance with the ADSL2
and/or VDSL2 standards, thereby directly infringing one or more of the method claims of the
`068 Patent either literally or under the doctrine of equivalents, resulting in a violation of 35
U.S.C. § 271(a).

164.    Windstream also indirectly infringes the `068 Patent under 35 U.S.C. § 271(b) by
actively inducing its customers to use Customer Premises Equipment configured for
communication with Windstream's Service Provider Equipment in accordance with the ADSL2
and/or VDSL2 standards in a manner that results in performance by a customer of some or all of
the steps required by method claims of the `068 Patent, while Windstream concurrently operates
its Service Provider Equipment in a manner that results in performance by Windstream of at least
a remainder of the steps required by the same method claims of the `068 Patent.  The
performance of processes falling within the scope of one or more method claims of the `068
Patent, resulting from steps performed by Windstream in conjunction with the steps that
Windstream induces its customers to perform, has caused and will continue to cause direct
infringement of method claims of the `068 Patent, either literally or under the doctrine of
equivalents.

165.    Windstream has had knowledge of the `068 Patent since at least the filing date of
this complaint.  Further, Windstream possesses specific intent to encourage others, including its
DSL customers, to perform some or all of the steps required by method claims of the `068
Patent, resulting in infringement of the '068 Patent, or at the very least is willfully blind to such
infringement.  Windstream encourages its DSL customers to perform some or all of the steps
required by certain method claims of the `068 Patent by providing, installing, configuring,

supporting, and maintaining Customer Premises Equipment that is then used by customers and

end users to communicate with Windstream Service Provider Equipment in accordance with the

ADSL2 and/or VDSL2 standards in a manner that, in coordination and combination with steps

performed by Windstream's actions, results in performance of certain method claims of the `068

Patent.  In addition, Windstream encourages its customers to perform some or all of the steps

required by certain method claims of the `068 Patent by providing instructions to customers on

how to install, connect, configure, and use DSL Customer Premises Equipment for

communication with Windstream Service Provider Equipment in accordance with the ADSL2

and/or standards in a manner that, in coordination and combination with steps performed by

Windstream's actions, results in performance of certain method claims of the `068 Patent.

166.    Intellectual Ventures II has suffered damage as a result of Defendants'

infringement of the `068 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Intellectual Ventures II respectfully request the following relief:

(a)    A judgment that Windstream has infringed the `636 Patent;

(b)    A judgment that Windstream has infringed the `695 Patent;

(c)    A judgment that Windstream has infringed the `548 Patent;

(d)    A judgment that Windstream has infringed the `182 Patent;

(e)    A judgment that Windstream has infringed the `912 Patent;

(f)    A judgment that Windstream has infringed the `532 Patent;

(g)    A judgment that Windstream has infringed the `928 Patent;

(h)    A judgment that Windstream has infringed the `601 Patent;

(i)    A judgment that Windstream has infringed the `175 Patent;

(j)    A judgment that Windstream has infringed the `808 Patent;

(k)    A judgment that Windstream has infringed the `991 Patent;

(l)    A judgment that Windstream has infringed the `410 Patent;

(m)    A judgment that Windstream has infringed the `876 Patent;

(n)    A judgment that Windstream has infringed the `473 Patent;

(o)    A judgment that Windstream has infringed the `735 Patent;

(p)    A judgment that Windstream has infringed the `348 Patent;

(q)    A judgment that Windstream has infringed the `171 Patent;

(r)    A judgment that Windstream has infringed the `545 Patent;

(s)    A judgment that Windstream has infringed the `068 Patent;

(t)    A judgment that Intellectual Ventures II be awarded all appropriate damages under 35 U.S.C. § 284 for Defendants' past infringement of the `636, `695, `548, `182, `912, `532, `928, `601, `175, `808, `991, `410, `876, `473, `735, `348, `171, `545, and `068 Patents up until the date such judgment is entered, including interest and costs;

(u)    A judgment for on-going royalties for any continuing or future infringement of any of the asserted Patents;

(v)    that this case be declared exceptional within the meaning of 35 U.S.C. § 285 and that Intellectual Ventures II be awarded its reasonable attorneys' fees, costs, and expenses that it incurs in prosecuting this action; and

(w)    that Intellectual Ventures II be awarded such further relief at law or in equity as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Intellectual Ventures II hereby demand trial by jury on all claims and issues so triable.

47

DATED:   February 8, 2013                    Respectfully submitted,


                                             */s/ Jeffrey B. Plies*
                                             Signature on file with the U.S. District Clerk

                                             Martin J. Black (State Bar No. 050751991)
                                             -- LEAD ATTORNEY
                                             martin.black@dechert.com
                                             DECHERT LLP
                                             Cira Centre 2929 Arch Street
                                             Philadelphia, PA 19104
                                             (215) 994-4000

                                             Jeffrey B. Plies  (State Bar No. 24027621)
                                             jeffrey.plies@dechert.com
                                             DECHERT LLP
                                             300 W. 6th Street
                                             Suite 2010
                                             Austin, TX 78701
                                             (512) 394-3000

                                             Stephen J. Akerley (State Bar No. 240793)
                                             Stephen.Akerley@dechert.com
                                             Justin F. Boyce (State Bar No. 181488)
                                             justin.boyce@dechert.com
                                             DECHERT LLP
                                             2440 W. El Camino Real Suite 700
                                             Mountain View, CA 94040-1499
                                             (650) 813-4800

                                             *Counsel for Plaintiffs Intellectual Ventures II
                                             LLC*